## C. B. ROHLAND v. LEVI ROOKE.

ERROR TO THE COURT OF COMMON PLEAS OF UNION COUNTY.

Argued May 17, 1889—Decided May 27, 1889.

Where, in a sheriff's interpleader, it was found that the claimant of the property, grain, stock, implements, which had been purchased at execution sales, left it with the execution defendant, who was made a tenant upon a farm rented by the claimant under an arrangement in good faith that the tenant should work the farm, keep up the property, and after taking out a support for himself and family turn over the surplus to the claimant, the transaction was not a fraud in law or in fact upon the tenant's creditors.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and MCCOLLUM, JJ.

Charge of Court below.

No. 57 July Term 1889, Sup. Ct.; court below, No. 97 September Term 1888, C. P.

On June 13, 1888, two judgments by confession were entered against J. W. Eyer; one in favor of Thomas Stetler, on a single bill dated December 27, 1877, for $1,356; the other, in favor of Charles B. Rohland, on a single bill dated January 19, 1888, for $273.20. On the same day, executions were issued upon said judgments and levies made on certain personal property of the defendant in the judgments. Part of the property levied upon being claimed by Dr. Levi Rooke, a feigned issue was framed and entered to No. 97 September Term 1888, wherein Dr. Rooke, the claimant, was made plaintiff, and Charles B. Rohland and Thomas Stetler, the execution plaintiffs, defendants.

At the trial of the issue on September 18, 1888, evidence was adduced to show that Rooke had bought the articles of property in controversy from one Kreamer, who had bought them at execution sales at which they had been sold as the property of J. W. Eyer; that after Rooke bought the goods he left them in the hands of Eyer, whom he made his tenant upon a farm he had rented, where they were levied upon as the property of Eyer. Eyer testified that the indebtedness represented by the executions upon which the levies were made, existed before Rooke bought the property from Kreamer.

The court, BUCHER, P. J., charged the jury in part as follows:

[If I understand the contention of the plaintiff aright it is this, that having purchased these personal chattels that at the time belonged to Eyer, but which had been sold from him by virtue of a sheriff's sale, he handed them over to him and put him on the farm that he had leased from the Cameron estate, to farm as his agent, the understanding being that he was to take this property and preserve it for the benefit of the doctor, and that he was to have his living expenses out of the farm, pay all the expenses operating the same, the hiring of hands and all that, furnish the seed, and execute that part of the contract, so far as the farming operations were concerned which rested upon Dr. Rooke, and that any surplus that might be

Charge of Court below.

left was to be handed over to him,—that is his contention.
And Jonathan Eyer swears substantially to the same thing.
The difficulty about the contract between these parties is, that
it is not in writing; but it was not necessary in order to make
a valid contract that it should be reduced to writing. . . . .
You are to find out first what it was; you are to ascertain what
the contract was between these parties, and thus determine
the ownership of these chattels. Then this was followed by
testimony on the part of the plaintiff by his witnesses, the main
ones being Jonathan W. Eyer and Elias Kreamer. They tes-
tify that in April, 1880, Jonathan W. Eyer went into the pos-
session of this farm; that he carried these chattels enumerated
in the bill of sale up there and began farming operations, if my
memory is not at fault, but you will remember all these things
for yourselves. Dr. Rooke did state that Eyer was at liberty
to sell any part of this stock as his agent that he might see
proper to do, bounded by the limitation that he was to keep it
up and maintain it; and if it wore out in the course of nature,
or in its use, or any mishap befell it, Eyer was to make it good
by supplying him with other property equal to that in value.
Was this the contract between the parties?] [1]   [The learned
counsel for the defendants insist that if it was so, the transac-
tion in law amounted to a sale and all the property which
Rooke furnished Eyer and any other property that Jonathan
W. Eyer purchased and put there in lieu of that which he sold,
or was lost and destroyed, was the property of Jonathan W.
Eyer and not the property of Dr. Rooke, and was liable to
seizure and sale as his property on this execution.] [2]

[But, gentlemen of the jury, we instruct you that in our
opinion such views of the law are erroneous in this particular
case. The evidence is, if you believe it, that Rooke put this
stock there and that Eyer was to return him that stock or other
in lieu of it, as his agent, and if Eyer did take the property of
Dr. Rooke, and by that I mean the products of the farm, the
money made on the farm which belonged to Rooke, and did
apply that to the purchase of other stock for Rooke as his
agent, in lieu of that which he sold, or which had died, or was
destroyed, that in law it would be the property of Rooke and
would not be the property of Jonathan W. Eyer, the defendant
in the writ.] [3]   But if you find from the evidence that any of

the property found there, other than that which was originally carried there by Eyer, as furnished him by Dr. Rooke from the purchase made by Kreamer, that any of that property found there was purchased by Eyer, with funds other than those that he derived from farming as agent of Rooke, as a matter of course that property would be liable to seizure and sale as the property of Eyer. If Eyer had means, acquired in any other way than from the proceeds of the farm, and appropriated that to the purchase of stock, it would be his own and would be liable to seizure and sale. Now, then, this whole question is a question of fact for you to determine under all the evidence.

As I told you before, the party in possession of personal property is presumed to be the owner. . . . . . . Jonathan W. Eyer testifies, according to my recollection, that the only identical property levied upon on the premises which he took there, as furnished by Dr. Rooke, is one mare, one Oliver chilled plow, a mower, two spring wagons, one fanning-mill, one bob-sled, two wagons, one sleigh and some harness, but he is unable to state how many sets of harness were there. [The other property in dispute you will understand, according to the evidence, was not furnished by Rooke specifically. But his contention is, that it was bought with the proceeds of the farm which belonged to him, and that, therefore, he is the owner of it. Then we have this grain growing in the ground. The contention is, as I said before, that Jonathan Eyer was simply the agent of Rooke and farming for him, and for that reason the ownership in the grain in the ground belongs to Rooke and not to Eyer. The defendants insist that this version of the transaction, as contended for by the plaintiff, is not the fact; that Dr. Rooke actually sold this property to Jonathan W. Eyer, the latter to pay him for it out of the proceeds of the farm, and that the title should remain in Rooke until paid for. If you find from the evidence that such was the fact, as a matter of course all the property except the grain in the ground would be liable to seizure and sale as the property of Jonathan Eyer,] [4] because, as I told you before, the law dislikes secret liens, and a man cannot sell his property to another and give him the possession and still retain a lien for the price as against creditors. It may be all right and honest between themselves, but as against creditors it would be a fraud in law irrespective of the inten-

tion of the parties. But you must not find that there was such a conditional sale, unless the evidence in the case satisfies you that such was the fact.

\* \* \* \* \* \* \* \*

You will take the case, gentlemen of the jury, looking at all the circumstances surrounding it in order to determine where the truth lies between these parties. If you find that this transaction was honest and fair, then you would find for the plaintiff. If you find that it was not so, then your verdict should be in favor of the defendants. You have heard the arguments of the respective counsel and further comment is useless from me. I will answer the points and I am done.

Defendants' counsel ask me to say [inter alia] :

2. As to all the property sold by Kreamer to Rooke and left by Rooke with Eyer and by Eyer removed to the Cameron farm, the title to all said property, under the contract or arrangement between Rooke and Eyer as to the same, as detailed by Rooke in his evidence, passed to Eyer, the said contract being in law a sale and not a bailment, and said property is liable to execution as the property of Eyer in this proceeding.

Answer: Refused.[5]

8. A test as to whether title to this property and grain and produce of this farm was in Eyer, under the arrangement with Rooke, or whether there was only a bailment, is this: Did a purchaser from Eyer of any of this property or grain, sold by Eyer as his own, take title thereto? If so, then the title was in Eyer.

Answer: Refused.[5]

The jury returned a verdict for the plaintiff in the issue. A rule for a new trial having been discharged, judgment was entered, when the defendants took this writ, assigning as error:

1–4. The portions of the charge included in [ ] [1 to 4]

5. The answers to defendants' points.[5]

*Mr. Charles S. Wolfe* (with him *Messrs. A. C. Simpson & Son* and *Mr. Andrew A. Leiser*), for the plaintiffs in error.

*Mr. Andrew H. Dill* (with him *Mr. E. M. Beale* and *Mr. Alfred Hayes*), for the defendant in error.

PER CURIAM:

This was a feigned issue under the sheriff's interpleader act, and involves the title to a quantity of stock, grain and farming implements. If the theory and contention of the plaintiff below be correct, and it has been so found by the jury, he was merely aiding a farmer, broken down financially, to support his family, by placing him upon a farm rented by plaintiff, and supplying him with the necessary stock and agricultural implements to work it. . The stock, etc., referred to, had at one time belonged to the debtor in the judgment, but had been sold as his property at a sheriff's sale, and the title thus acquired passed to the plaintiff. Under such circumstances, it was not a fraud in law or in fact to leave them in the possession of the debtor. The plaintiff claimed, and the jury have found, that Eyer was farming the place as the agent of the plaintiff, with the understanding that he was to keep up the stock and farming implements by supplying anything that was lost or worn out, and, after taking out a support for himself and family, hand over any surplus to the plaintiff. This was certainly a humane and generous arrangement, and if done in good faith, as the jury have found, deserves commendation rather than censure. The defendants in the issue have not suffered by it, as their judgment antedated the arrangement; they cannot say they were misled by it, and gave credit to Eyer upon the strength of his possession of the property in question. The case was one for the jury and was submitted to them in a clear and adequate charge.

Judgment affirmed.